## Borough of New Brighton *versus* Peirsol.

1. Where a person purchases property abutting on a street, a change in the grade of which has been legally established, and the work of grading actually begun on the ground before the purchase, the damages accruing to the property by reason of the change in grade will not be divided so as to give the purchaser a share thereof. He takes the property *cum onere*.

2. But where some work has been done toward altering the natural grade of a street, but it does not appear that any specified grade has been fixed by the municipality, what has been done creates no legal presumption that any further change in the grade will be made. And a person buying property abutting on a street after such first change in grade has been made, but before other alterations acknowledged to have been made by municipal sanction, may, since the constitution of 1874, recover for the damages accruing to his property by reason of the last mentioned changes.

October 9th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Beaver county:* Of October Term, 1884, No. 28.

This was an action of assumpsit by James K. Peirsol against the Borough of New Brighton, to recover damages for the injury caused to plaintiff's property abutting on Lock

street, by reason of a change of grade of said street by the authorities of the said borough, alleged to have been made after the plaintiff purchased his lot.

At the trial, the plaintiff claimed that in 1867–68, while the lot referred to belonged to one Miller McCullough, the street on which it abutted was slightly improved and raised, mainly by private subscription, no grade being fixed by ordinance, resolution or otherwise, and that the then owner filled up and graded his lot to correspond with the changed condition of the street; that he, the plaintiff, bought the lot in 1874 at sheriff's sale, and in 1877–78 the borough authorities, without his consent, changed the grade in front of the lot, by filling up the street about two feet, for which he claimed damages.

The defendants, on the other hand, contended that in 1867–68 the grade of the street was raised two or three feet by sanction of the borough, and a roadway about twenty-five feet in width constructed at that grade, the space between the roadway and (then) McCullough's lot being but little filled up; that the street remained in this condition until 1877–78, when the borough widened it to its full width of sixty feet, for this purpose filling in between the roadway and plaintiff's line, to the height of the grade established in 1867–68.

Evidence was given in support of both views, but not printed in the paper books.

The defendants submitted the following point:

"If the jury find from the evidence, that the grade of Lock street abutting on plaintiff's premises was fixed and completed, substantially at the elevation it now is, prior to plaintiff's purchase of the property in 1874, their verdict should be for the defendants."

Answer. "This proposition is affirmed, with this explanation and modification: If a grade was regularly established and fixed by the borough authorities in the manner required by law, that is, if as required by the seventh clause of the third section of the Act of April 3d, 1851, they had given due notice to the then owner of the plaintiff's lot of a proposition to fix or change the grade of the street, designating a time and place when he might be heard in relation thereto, and after such notice and hearing, if the owner saw fit to appear and be heard, the said authorities fixed and established a grade, and proceeded to make the street to conform thereto by cutting down and filling up the same, the said then owner of the lot would be entitled to damages—damages not only for injury caused by any partial cutting down and filling up in pursuance of the grade established, but for the entire damages that might accrue to the lot when the street was entirely and completely cut down or filled up so as to correspond to the grade

established, both as to height and width.  There could be no cutting or splitting up of damages, these must be regarded as a whole; and the owner must then embrace in his claim, and the borough must then pay the entire damages which is, or that may be occasioned by the change of the grade, those that are immediate, and also those that are prospective, and the then owner was entitled to the whole of said damages at that time, and he would not be allowed to claim and recover for part of the injury then, and subsequently he or a subsequent owner claim and recover for injury that might result from the additional work necessary to fully complete the grading to correspond with the grade then regularly established.

"If, however, without the regular and legal establishment of grade on that street in the manner we have indicated, the borough proceeded and did work thereon, cutting down and filling up the same, this would be an actual damage and alteration of the grade to the extent of the actual cutting or filling; and the borough would, if since the constitution of 1874, be liable for the injury such change and alteration actually made caused to the owner of the lot, and for the injury then actually done, the owner could then claim and recover.  But if subsequently, and soon after having paid for such actual injury thus done, a grade was regularly established making a further change or alteration in the grade additional to what had been before made, or if additional work was done on the street by the borough, causing a further change and alteration, and injury resulted to the lot by reason of the establishing of such different grade or by reason of such additional work, the then owner of the lot would be entitled to recover, and the borough to pay for such injury thus occasioned; and any change thus made, if it occasioned injury to the lot additional to the injury occasioned by the former change, would be sufficient to entitle the owner to compensation in damages therefor."

Verdict for the plaintiff for $193, and judgment thereon; whereupon the defendants took this writ assigning for error the answer to their point.

*W. S. Morlan,* for plaintiffs in error.—The point submitted embraced but a single issue.  Was the grade of Lock street raised, or not, at the time specified?  By the answer of the court the minds of the jury were taken from the real question and directed to another entirely foreign to the issue.  Notice or lack of notice to the owner of the property in 1867–68 had nothing to do with the present case.  Whatever damage may have been done to the property under former

[Lee v. Newell.]

owners, concerned them only. If the provisions of the Act
of Assembly were not carried out, they were the ones to
complain.

*S. B. Wilson* (with whom was *J. J. Wickham*), for defen-
dant in error.

The opinion of the court was filed October 20th, 1884.

PER CURIAM. If a grade of the street had been legally
established and the work actually commenced on the ground,
before the purchase by the defendant in error, the damages
should not be so split and divided as to give him a portion
thereof. He would take the property *cum onere*. In this case
some work had been done towards changing the natural grade
of the ground, but it does not appear that any specific grade
had been fixed by any ordinance or resolution of the munici-
pality. What had thus been done, created no legal presump-
tion that any further change of grade would be made. The
former owner could not recover for these damages not then
contemplated. The claim now is for change of grade made
since the defendant in error purchased, and for damages
sustained by work done since the adoption of the Constitution
of 1874.

Judgment affirmed.